# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JUSTIN H.[1],

        Plaintiff,

        v.

FRANK J. BISIGNANO[2],
*Commissioner of Social Security*,

        Defendant.

NO. 2:24-cv-10736-KS

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

On December 12, 2024, Plaintiff filed a Complaint seeking review of the Social Security Administration's partial denial of his applications for a period of disability, disability insurance benefits, child's insurance benefits, and supplemental security income. (Dkt. No. 1.) Plaintiff filed his opening brief on March 15, 2025. (Dkt. No. 14.) Defendant filed an Opposition on May 5, 2025. (Dkt. No. 17.) Plaintiff filed his Reply on June 4, 2025. (Dkt. No. 20.)

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank J. Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should therefore be substituted as the defendant in this suit. No further action is needed to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Court has taken the matter under submission without oral argument.  Based on the pleadings and the administrative record submitted to the Court, the Court **AFFIRMS** the Commissioner's decision.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On May 24, 2020, Plaintiff protectively filed an application for a period of disability and disability insurance benefits as well as applications for child's insurance benefits and supplemental security income, each alleging a disability onset date of December 1, 2002.  (*See* Administrative Record ("AR"), Dkt. No. 9 at 18.)  The Commissioner denied Plaintiff's claim by initial determination on November 16, 2020 (AR 265-70), and upon reconsideration on April 15, 2021 (AR 278-95).  Administrative Law Judge ("ALJ") Sally C. Reason conducted a hearing on February 23, 2022.  (AR 81-99.)  Thereafter, ALJ Reason issued an unfavorable decision on March, 2022.  (AR 229-54.)  Plaintiff appealed this decision, and the Appeals Council granted Plaintiff's request for review.  (AR 255-61.)  In its remand order, the Appeals Council directed ALJ Reason to do the following: (1) evaluate Plaintiff's fibromyalgia under Social Security Ruling 12-2p; (2) obtain additional evidence concerning Plaintiff's physical impairments in order to complete the administrative record; and (3) give further consideration to Plaintiff's maximum residual functional capacity ("RFC")[3], and in doing so evaluate the medical opinions, particularly that of Vivek Savur, M.D., and obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base.  (AR 255-61.)

Upon remand, ALJ Reason conducted an in-person hearing on May 6, 2024.  (AR 48-80.)  Plaintiff, who was represented by his counsel Patricia L. McCabe, appeared and testified.  (AR 48-80.)  Also appearing and testifying were Heather Berens, M.D., an impartial medical

---

[3] The RFC is the maximum that a claimant can do despite his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.

expert, and June C. Hagen, an impartial vocational expert. (AR 48-80.) ALJ Reason issued a partially unfavorable decision on May 21, 2024. (AR 14-47.) Plaintiff appealed the decision, and the Appeals Council denied Plaintiff's request for review on October 8, 2024. (AR 1-6.) Plaintiff subsequently filed the instant action in this Court on May 31, 2024. (Dkt. No. 1.)

## SUMMARY OF ADMINISTRATIVE DECISION

To start, ALJ Reason clarified that Plaintiff "filed three applications in this case: he filed an application for supplemental security income, for a period of disability and disability insurance benefits, as well as an application for child's disability benefits." (AR 19.) ALJ reason noted that Plaintiff's alleged disability onset date was December 1, 2002. (AR 19.)

As for Plaintiff's child's disability benefits application, ALJ Reason clarified that to be entitled to child's disability and insurance benefits under section 202(d) of the Social Security Act, "the claimant must have a disability that began before attainment of age 22." (AR 19.) Thus, ALJ Reason determined that "the claimant must establish disabling limitations prior to May 19, 2006, the date he attained the age of 22," to be entitled to child's disability benefits. (AR 19.)

As for Plaintiff's claim for a period of disability and disability insurance benefits, ALJ Reason determined that "[t]he claimant's earning record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2004." (AR 19.) "Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." (AR 19.)

Based on the above, ALJ Reason concluded as follows:

After careful consideration of all the evidence, the undersigned concludes the

3

claimant has not been under a disability within the meaning of the Social Security Act prior to attaining age 22 for purposes of establishing eligibility for child's disability insurance benefits.     Furthermore, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act for purposes of establishing a period of disability and disability insurance benefits.   However, the claimant's application for supplemental security income, as discussed in greater detail below, has been allowed.     After careful consideration of all the evidence, the Administrative Law Judge concludes that the claimant was not disabled prior to January 1, 2020, but became disabled on that date and has continued to be disabled through the date of this decision.

(AR 19-20.)  ALJ Reason then presented her findings from the five-step sequential evaluation process for determining whether an individual is disabled pursuant to 20 CFR §§ 404.1520(a) and 416.920(a).  (*See* AR 21-37.)

At step one, ALJ Reason found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date.  (AR 22.)  At step two, ALJ Reason found that "[s]ince the alleged onset date of disability, December 1, 2002, the claimant has had the following severe impairments: traumatic brain injury and concussive disorder; detached retina, status-post surgical repair with macular atrophy; loss of vision in the right eye; migraine headaches; degenerative disc disease, status-post microdiscectomy; mild neurocognitive disorder; unspecified mood disorder/depression."  (AR 22-23.)  "Beginning on the established onset date of disability, January 1, 2020, the claimant has had the following additional severe impairments: fibromyalgia."  (AR 22-23.)

At step three, ALJ Reason determined that "[p]rior to January 1, 2020, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1" ("the Listings").  (AR 24-25.)  ALJ Reason also assessed that prior to January 1, 2020, Plaintiff had the following residual functional capacity:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: he can only sit for two hours at a time and up to 8 hours total in an 8-hour workday; he can stand 30 minutes at one time, and for up to 2 hours total in an 8-hour workday; he can walk for 30 minutes at one time, and for up to four hours total in an 8-hour workday; he can use his upper extremities for reaching frequently and has no limitations in handling, fingering and feeling; he can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; he must avoid heights and heavy machinery; he must avoid extremes of cold; and he would be limited to unskilled work performed at a routine pace as opposed to production paced work.

(AR 25-31.)

ALJ Reason proceeded to step four and determined that Plaintiff has no past relevant work, that Plaintiff is a younger individual, and that Plaintiff had at least a high school education.  (AR 31-32.)  At step five, ALJ Reason determined that "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed."  (AR 32-33.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Although this Court cannot substitute its discretion for the ALJ's, the Court must nevertheless review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).

The Court may review only the reasons stated by the ALJ in their decision "and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." *Orn*, 495 F.3d at 630. Additionally, the Court will not reverse the decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

Plaintiff asserts that ALJ Reason's finding that Plaintiff was not disabled during the relevant period from December 1, 2002 (Plaintiff's alleged disability onset date) through May 19, 2006 (the date Plaintiff's eligibility for child's disability benefits ceased) is not supported by substantial evidence. (*See* Dkt. No. 14 at 16-27.) Plaintiff avers that ALJ Reason erred in

her evaluation of Plaintiff's symptoms and testimony, her evaluation of Plaintiff's father's statements, and in making her RFC determination. (*See* Dkt. No. 14 at 16-27.) Accordingly, "Plaintiff requests the Court reverse the decision of the Commissioner of Social Security and remand for further proceedings as the decision is tainted by legal error and not based on substantial evidence." (*Id.* at 27.)

## I.    Assessment of Plaintiff's Subjective Symptom Testimony

### A.  Legal Standard

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "The claimant, however, need not prove that the impairment reasonably could be expected to produce the *alleged* degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce *some* degree of pain or other symptom." *In re Dana Long*, No. 22CV1838-W(BLM), 2023 U.S. Dist. LEXIS 180974, at *39 (S.D. Cal. Oct. 6, 2023 (emphasis added) (citing *Lingenfelter*, 504 F.3d at 1036).

"Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms," and those reasons must be supported by substantial evidence in the record. *Id.* at 1102 (citation omitted); *see also Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1161 (9th Cir. 2008) (finding a court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear-and-convincing standard"). The ALJ must

also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). Indeed, "[g]eneral findings are insufficient." *Brown-Hunter*, 806 F.3d at 493. Nevertheless, "[t]he standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Notably, an ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498; *see Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."); Social Security Ruling ("SSR") 16-3p (stating the ALJ may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual"). But "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). In considering potential inconsistencies between the plaintiff's record and testimony, an ALJ cannot cherry-pick medical evidence disfavoring a claimant without considering the broader context of the medical record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (holding ALJ improperly rejected claimant's subjective complaints when he failed to "fully account[] for the context of materials or all parts of the testimony and reports" and his "paraphrasing of record material [was] not entirely accurate regarding the content or tone of the record").

**B.  The ALJ's Decision**

ALJ Reason summarized Plaintiff's subjective complaints as follows:

At the hearing held in February 2022, the claimant testified that he obtained his associate's degree two years ago in general sciences.  The claimant testified that despite obtaining his college degree, he has been unable to work due to constant migraines, constant pains, and memory issues.  He also testified that he has fibromyalgia.  He testified that he has pain in his feet and has to wear special shoes.  He testified that he is only able to stand 5-10 minutes and walk "maybe 50 yards".  He testified that he is unable to lift more than 5 pounds in his left arm and 10 pounds in his right arm.  He testified that he is legally blind in his right eye.

At the hearing held in May 2024, the claimant testified that he obtained his degree in 2020.  He testified that the last time he attempted to work was in 2013, but was unable to continue due to pain.  He gets migraine headaches every single day.  He was able to get through school because he took one class at a time and received disability services for extended time with tests and assignments.  He testified that he required testing environments that were peaceful and quiet with little light.  He never worked in the field in which he obtained his degree.

(AR 26-27 (internal citations omitted).)

ALJ Reason then applied the "two-step process" articulated above, finding that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to January 1, 2020, for the

9

reasons explained in this decision." (AR 27.) ALJ Reason found that Plaintiff's testimony was inconsistent with the objective medical evidence, the medical opinion evidence, and Plaintiff's daily activities. (AR 27-31.)

### 1. Objective Medical Evidence

ALJ Reason provided a thorough overview of Plaintiff's medical record, starting with Plaintiff's January 18, 2001 admission to the hospital following his head injury. (AR 27.) While hospitalized, Plaintiff was evaluated "by an ophthalmologist, Mark Baskin, M.D., who referenced CT [scans] of the head documenting right orbital floor fractures and a nasal fracture . . . [and] diagnosed the claimant with a concussion with irregular pupils." (AR 27.) "Several weeks following his discharge from the hospital, the claimant treated with [Ronald Baum, M.D., a neurologist] at his office reporting ongoing tenderness of the left occipitoparietal region, mild generalized headaches, and difficulty concentrating as well as symptoms consistent with post concussive syndrome." (AR 27.) Nevertheless, during his follow up another several weeks later, Plaintiff "not[ed] improvement in his headaches and also noting that he was keeping up with his classes," thus leading Dr. Baum to conclude that Plaintiff had a "nicely resolving post concussive syndrome." (AR 27 (internal citations and quotations omitted).)

Plaintiff then saw ophthalmologist Patrick Keating, M.D., "to whom [Plaintiff] reported blurred vision in the right eye since a head injury in January 22, 2001." (AR 28.) In a letter dated November 13, 2002, Dr. Keating "not[ed] clinical findings of an almost total traction retinal detachment of the right eye with associated vitreous strands and some significant atrophy and hole formation in the right retina." (AR 28 (internal citations and quotations omitted).) Plaintiff "eventually underwent surgical repair of the detached retina in 2003 resulting in considerable improvement in his vision." (AR 28 (internal citations omitted).) "Following December 2002, the record falls silent with respect to [Plaintiff's] concerns about

an alleged traumatic brain injury resulting in ongoing cognitive deficits until November 16, 2014." (AR 28.)

On November 16, 2014, "the claimant was seen at Jules Stein Eye Institute by ophthalmologist Steven Schwartz, M.D., to whom he reportedly wanted to discuss [the] possibility of improving [the] vision in [his] right eye" after undergoing retinal detachment repair in 2003." (AR 28 (internal citations and quotations omitted).) "Upon examination, Dr. Schwartz noted that there were no new detachments, tears, or holes, and that the retina in both eyes was "entirely attached 360"; that "[t]he claimant's vision in his right eye was measured at 20/400, but was correctable to 20/150; that "[t]he vision in his left eye was 20/40 +2, but was correctable to 20/20"; and that "[h]is external eye examination was entirely normal with the exception of some scarring and retinal pigment epithelial atrophy of the right eye." (AR 28.) Ultimately, Dr. Schwartz "recommended that the claimant follow up in one year." (AR 28.) But "[t]here is no evidence that the claimant ever followed-up with Dr. Schwartz at the Jules Stein Eye Institute in November 2015 as recommended." (AR 28.)

Plaintiff "was seen again in December 2014 by ophthalmologist, Patrick Keating, M.D., [] and his visual acuity was measured at 20/60 -2 in the right eye and 20/20 in the left eye." (AR 28.) Plaintiff "did follow up periodically with Dr. Keating in December 2016 (at which time his visual acuity was measured at 20/70 -2 in the right eye and 20/20 in the left eye), in May 2019 (at which time his visual acuity showed no change), and again in April 2021 (at which time his visual acuity was measured at 20/200 in the right eye and 20/20 in the left eye." (AR 28-29.)

"Meanwhile, in August 2017, when the claimant was seen at West Hills Neurology by Vivek Savur, M.D.[], the claimant reported that since his head injury he has had difficulty concentrating, occasionally outbursts of temper, difficulty staying focused, very poor mathematical ability, and was forced to drop out of school." (AR 29.) Although "Dr. Savur

noted clinical findings of strabismus and esophoria in the right eye, no vision in the right eye, tearfulness, and some difficulty with clock drawing and with serial sevens," Plaintiff "declined Dr. Savur's recommended treatment and was advised to follow up in one year." (AR 29.) But Plaintiff "did not follow up with neurology for over two years." (AR 29.)

In September 2019, Plaintiff was seen by neurologist Veena Sengupta, M.D. "for the primary purpose of obtaining special services and/or being excused from mathematics requirements at Pierce College." (AR 29.) Upon examination, Dr. Sengupta noted Plaintiff's strabismus with esotropia of the right eye, "absent" visual fields in the right eye with limited light perception, limited right lateral gaze, and some mild difficulty with right upper gaze" and recommended that Plaintiff "start a trial of triptan agents for acute relief of migraine headaches." (AR 29.) Plaintiff refused Dr. Sengupta's treatment, stating, "I am against pharma." (AR 29.)

"In addition to the evidence regarding his visual impairment, the evidence also demonstrates that the claimant has a history of musculoskeletal impairments." (AR 29.) In September 2019, orthopedist Sang Kim, M.D. diagnosed Plaintiff with "degenerative of lumbar or lumbosacral intervertebral disc, displacement of lumbar intervertebral disc without myelopathy, spinal stenosis in cervical region, as well as a history of microdiscectomy at L5-S1" and recommended that Plaintiff "receive physical therapy twice a week for six weeks." (AR 29.)

### 2. *Medical Opinion Evidence*

ALJ Reason also considered the opinions of examining consulting physician M. Wallack, M.D. and consulting physicians and psychologists E. Christian, M.D.; F. Greene, M.D.; Mark Berkowitz, Psy.D.; and Norman Zukowsky, Ph.D. Additionally, ALJ Reason considered the opinions of the medical experts at the previous February 2022 hearing, G. Bell,

M.D. and R. Cohen, M.D.  (AR 31.)

In September 2020, Plaintiff was seen for an internal medicine consultative evaluation with Dr. Wallack during which Plaintiff reported "head trauma with resulting detached retina in 2001, as well as lower back pain since 2011 resulting in a microdiscectomy in 2015."  (AR 30.)  Upon examination, Dr. Wallack observed that Plaintiff was "agile and maneuver[ed] well in the exam room"; that "there was lack of lateral gaze in the right eye and a vertical scar on the lumbosacral area"; that the "straight leg raising tests were negative in the seated and supine positions and there was slight tenderness to very light touch throughout the lumbosacral and thoracic spine."  (AR 30 (internal citations and quotations omitted).)  However, Dr. Wallack also observed that Plaintiff's "range of motion in the spine was normal" and that "there were no neurological deficits."  (AR 30 (internal citations and quotations omitted).)  "Dr. Wallack opined that the claimant would not have any work related functional limitations with the exception of some impaired vision, right eye with loss of lateral gaze."  (AR 30 (internal citations and quotations omitted).)  "Similarly, nonexamining State agency physicians E. Christian, M.D., and F. Greene, M.D., opined that the claimant should avoid work requiring binocular vision, precise depth perception and no work requiring left to right moving machinery."  (AR 31.)

ALJ Reason found the opinions of Drs. Wallack, Christian and Greene unpersuasive as these opinions were "inconsistent with and unsupported by the objective medical evidence and did not adequately consider the claimant's objective complaints," particularly Plaintiff's lower back pain and retinal detachment.  (AR 31.)

ALJ Reason also considered the opinions Drs. Christian, Greene, Berkowitz, Zukowsky, Bell, and Cohen, "all of whom determined that there was insufficient evidence of any medically determinable or severe impairment between 2002 and 2006."  (AR 31.)  ALJ Reason found these opinions were "not persuasive because they are not supported by or consistent with the

objective medical evidence, especially the more recent evidence submitted in connection with the claimant's appeal documenting the presence of a traumatic brain injury." (AR 30.)

Additionally, ALJ Reason noted "that the record contains a letter from neurologist Vivek Savur, M.D., dated August 2017, indicating that the claimant was being treated for a remote history of traumatic brain injury resulting in difficulty with attention and impaired focus and also mathematical difficulty." (AR 31 (internal citations and quotations omitted).) Plaintiff found Dr. Savur's opinion "partially persuasive because it does not quantify the claimant's limitations" and "Dr. Savur appears only to have evaluated the claimant once in 2017." (AR 31.) Nevertheless, ALJ Reason found that "Dr. Savur's opinion is consistent with and supported by other evidence of record and is consistent with the ultimate mental limitations identified in the residual functional capacity above." (AR 31.)

Finally, ALJ Reason assessed the "medical opinion of Dr. Berens, who testified that prior to January 1, 2020, the claimant would have had the limitations identified in the finding above." ALJ Reason found the opinion of Dr. Berens persuasive because "it is well-supported by and consistent with the evidence." (AR 31.) More specifically, ALJ Reason found that Dr. Berens "had an opportunity to review all of the evidence unlike the other physicians who provided opinions" and "provided extensive testimony at the hearing with references to the record." (AR 31.)

### 3. *Daily Activities*

Finally, ALJs Reason considered Plaintiff's daily activities. ALJ Reason summarized Plaintiff's testimony regarding his daily activities as follows:

In connection with his applications for child's disability benefits, disability insurance benefits, and supplemental security income, the claimant alleged an

14

inability to engage in competitive employment due to blindness and low vision, a traumatic brain injury, and a permanent injury to the lower back. He explained in a Function Report dated June 2020 that he has a detached retina, blindness in his right eye, "severe sensitivity to light and the sun", as well as a traumatic brain injury that causes "severe migraine headaches which can be triggered by stress and light conditions. He also reported difficulty with short term and long term memory, and difficulty with lower back pain due to a "slipped disk" at L5-S1. He did not report any difficulty with dressing himself, feeding himself or toileting himself, however, he indicated that if he has a "severe headache" he requires assistance showing so he does not fall and that his depth perception is bad which causes him to have difficulty when parallel parking his car. He reported that he prepares frozen meals several times a week and can clean his room and change his bed. He reported that he lives with his parents and that his mother does most of the housework. The claimant also reported that he is able to leave his home and can do so independently. He travels by car and can drive but has difficulty parking when there is no handicapped parking space. He reported that he is less social and that he has to be home and away from light. The claimant also reported that he does not handle stress well.

(AR 26 (internal citations and quotations omitted).)

ALJ Reason found that "the record simply does not establish disabling limitations particularly given [Plaintiff's] apparent abilities (i.e., obtaining and maintaining a driver's license, completing high school with no special education or additional services, completing college coursework with no additional services, etc.)." (AR 30.)

\\
\\

15

1

2

### C.  Analysis

3     Plaintiff asserts that ALJ Reason erred in discounting Plaintiff's testimony because "the

4     record does support physical limitations relating to the claimant's history of brain injury and

5     resulting retinal detachment and headaches."  (Dkt. No. 14 at 20.)

6

7     ALJ Reason found that Plaintiff's "allegations that he has been unable to sustain the

8     physical or mental demands of competitive employment due to a traumatic brain injury,

9     neurocognitive disorder, and mood disorder are not consistent with the objective medical

10    evidence."  (AR 27.)  "While subjective pain testimony cannot be rejected on the sole ground

11    that it is not fully corroborated by objective medical evidence, the medical evidence is still a

12    relevant factor in determining the severity of the claimant's pain and its disabling effects."

13    *Smartt*, 53 F.4th at 498.  Nevertheless, the ALJ must make "a specific finding linking a lack of

14    medical records to Claimant's testimony about the intensity of [Claimant's] pain."  *Burrell v.*

15    *Colvin*, 775 F.3d 1133, 1138-39 (9th Cir. 2014).

16

17    The Court finds that ALJ Reason did not err in discounting Plaintiff's subjective

18    testimony based on a lack of supporting objective medical evidence because she properly

19    engaged in the "two-step process" articulated above and identified several inconsistencies

20    between Plaintiff's testimony and the objective medical evidence.  For example, despite

21    Plaintiff's reports of cognitive impairments due to his head injury, ALJ Reason notes that

22    Plaintiff's December 2002 neurological evaluation by Dr. Baum was "entirely normal" and that

23    Plaintiff's MRI from that same time was a "normal MRI of the brain" with indication of "head

24    trauma," not "traumatic brain injury."  (AR 28.)  Additionally, "[f]ollowing December 2002,

25    the record falls silent with respect to his concerns about an alleged traumatic brain injury

26    resulting in ongoing cognitive deficits, until November 16, 2014."  (AR 28.)

27

28    \\

ALJ Reason also discounted Plaintiff's subjective symptom testimony based, in part, on the medical opinions of Banafshe P. Sharokhi, Ph.D and Andre Petrossian, Psy.D.  (AR 34-35.)

In October 2020, Banafshe P. Sharokhi, Ph.D. administered a psychological evaluation, mental status examination, intelligence scale test, and memory scale test to Plaintiff.  (AR 804.) Plaintiff reported "migraines, memory deficits, mood swings, and alleged blindness in the right eye" as well as "attention and concentration deficits[,] mood swings, irritability, low frustration tolerance and sleep problems."  (AR 805.)  For the mental status examination, Dr. Sharokhi reported that Plaintiff's functioning was generally unremarkable with the exception of Plaintiff's remote memory being "mildly impaired" and his recent and immediate memory being "impaired"; that Plaintiff's attention and concentration "presented as variable"; and that Plaintiff's fund of knowledge was "slightly below average."  (AR 808-10.)  As for the standardized intelligence test, Dr. Sharokhi reported that Plaintiff's "cognitive abilities are likely higher than scores reflect, per presentation, conversational vocabulary and current functioning/activities of daily living" and that Plaintiff "exerted inconsistent and suboptimal effort on testing as he was observed to be giving up too easily on subtests, and impulsive responding at times without careful examination."  (AR 811-12.)  As for the memory test, Dr. Sharokhi similarly reported that Plaintiff "exerted suboptimal effort on testing as he was observed to be giving up too easily on subtests and responding impulsively at times without careful examination."  (AR 812.)  Ultimately, Dr. Sharokhi deferred assessing Plaintiff's functional limitation and opined that "[g]iven the claimant's testing performance and scores it is difficult to ascertain the nature and degree of the claimant's limitations if any."  (AR 816.)

Dr. Sharokhi evaluated Plaintiff again in March 2021, and assessed as follows:

Based on today's assessment, the claimant presents with the mild inability to understand, remember and carry out short, simple instructions.  He presents with

17

the moderate inability to understand, remember and carry out detailed instructions.  He presents with the mild inability to accept instructions from supervisors.  He presents with the mild inability to perform simple work-related tasks without additional supervision.  He presents with the moderate inability to maintain attention and concentration.  He presents with the mild inability to maintain persistence and pace.  He presents with the mild inability to maintain day-to-day activities, including attendance and safety.

The claimant was relatively cooperative during the evaluation.  He presents with the moderate inability to interact appropriately with supervisors, coworkers, and peers, per reported mental health issues and reported interpersonal functioning.

The claimant appeared initially somewhat irritable.  However, he was more engaging as the evaluation progressed.  He alleges a history of having mental health issues.  Therefore, the appropriate mental health treatment services are recommended.

(AR 841.)

On September 12, 2023, Plaintiff was referred to Andre Petrossian, Psy.D. "for a neuropsychological assessment to evaluate his current cognitive functioning."  (AR 1133.) Regarding test validity, Dr. Petrossian opined that "[b]ehavioral observations and overall performance on validity measures suggest that [Plaintiff] was putting forth adequate effort during the assessment" and that "[t]he following results are considered a valid reflection of his current functioning." (AR 1141.)  Dr. Petrossian also opined that "determinations that previous assessment results should be interpreted cautiously were made using what appeared to be mainly qualitative data (behavioral observations and score scatter), as there was no information provided on any type of formal effort testing utilized."  (AR 1141.)

As for Plaintiff's cognitive limitations, Dr. Petrossian opined that Plaintiff "meets diagnostic criteria for mild neurocognitive disorder due to traumatic brain injury" as he "exhibits mildly impaired orientation, moderately impaired problem-solving and reasoning abilities, variable speed of information processing, impairment in executive functions, impairment in language, and variable visuospatial skills," and significant impairment in learning and memory.  (AR 1141.)  Dr. Petrossian further opined that Plaintiff's "current difficulties may reflect the presence of a post-concussion syndrome, which can be marked by a combination of symptoms including impaired mood, concentration and memory difficulties, and somatic symptoms such as sleep disturbance, headache, and dizziness."  (AR 1142.) Moreover, Dr. Petrossian opined that Plaintiff "performed adequately on measures of vigilance, color naming speed, visual scanning speed, figure planning and organization, shape learning immediate recognition, and complex figure copy" and that "[t]hese represent good cognitive reserves that can both buffer brain related changes and also be used to compensate for his memory difficulties."  (AR 1142.)

Based in part on these medical opinions, ALJ Reason concluded the record evidence does not support a finding of disability prior to January 1, 2020.  (AR 36 (citations omitted).) However, Plaintiff asserts that ALJ Reason erred in making this finding because the consistencies between the findings of Dr. Shiroki and Dr. Petrossian indicate that the record does establish disabling limitations prior to January 1, 2020.  (Dkt. No. 14 at 22.)  Plaintiff further asserts that ALJ Reason's conclusion "is inconsistent with the record as a whole which indicates Plaintiff had a memory impairment as a result of the brain injury" and that "the neuropsychological testing support[s] the memory impairment [and the] need to take 15 years in the disabled student's program at a community college to obtain an AA degree."  (*Id.*)

As already discussed, the medical evidence concerning Plaintiff's cognitive limitations from the period between December 1, 2002 and January 1, 2020 is scant, particularly for the period between December 1, 2022 and May 19, 2006.  (AR 28.)  And to the extent the October

6, 2020 and March 19, 2021 consultative examinations of Dr. Shiroki and the September 12, 2024 neuropsychological assessment of Dr. Petrossian support a finding of cognitive limitations, any such limitations would apply to the period after January 1, 2020, the period for which ALJ Reason already determined Plaintiff was disabled.  (AR 36.)

"Ultimately, the 'clear and convincing' standard requires an ALJ to show [her] work, which the ALJ did here."  *Smartt*, 53 F.4th at 499.  ALJ Reason provided specific reasons supported by substantial evidence for giving less weight to Plaintiff's testimony by identifying several inconsistencies between Plaintiff's subjective symptom testimony and Plaintiff's objective medical evidence.  Therefore, Plaintiff's assertion that ALJ Reason failed to provide specific reasons for discounting his testimony is unfounded.  *See Wilson v. O'Malley*, No. 23-35463, 2024 U.S. App. LEXIS 11428, at *2 (9th Cir. May 10, 2024) (affirming the district court's finding that the ALJ did not commit error because the ALJ identified several inconsistencies between the plaintiff's symptom allegations and testimony and the objective medical evidence and daily activities); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence").

## II.    Assessment of Lay Witness Statements

### A. Legal Standard

In 2017, the Social Security Administration promulgated new regulations that apply to claims filed on or after March 27, 2017.  *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).  Under these revised regulations, ALJs are not required to articulate how they considered evidence from nonmedical sources, which includes lay testimony from friends and family, using the same requirements outlined in the regulations for medical source evidence, 20 C.F.R. § 404.1520c(d).  In fact, the Social Security Administration, in promulgating the new regulations,

commented that "aside from where [its] regulations elsewhere may require an adjudicator to articulate how [the Administration] consider[s] evidence from nonmedical sources, . . . there is no requirement for [the Administration] to articulate how [the Administration] considered evidence from nonmedical sources about an individual's functional limitations and abilities using the rules in final 404.1520c[.]"  82 Fed. Reg. at 5855.

Traditionally, Ninth Circuit "precedent has required ALJs to give germane reasons for discounting the testimony of lay witnesses." *Hudnall v. Dudek*, No. 23-3727, 2025 U.S. App. LEXIS 11525, at *11 (9th Cir. May 13, 2025) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) and *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)).  However, the Ninth Circuit has determined that this precedent requiring "germane reasons" to reject lay witness testimony is "clearly irreconcilable" with the revised Social Security regulations.  *Id.* at *19. Accordingly, the Ninth Circuit held that the "'germane reasons' precedent should no longer apply to claims filed on or after March 27, 2017, and in considering such claims, ALJs shouldn't need to explain their reasons for discounting evidence from nonmedical sources, such as the claimant's friends and family." *Id.*

### B.  The ALJ's Decision

ALJ Reason considered the statements of Plaintiff's father, Gary H., who prepared Third Party Function Reports in June 2020 and February 2021.  ALJ Reason summarized Gary H's statements as follows:

[Gary H.] noted that the claimant has difficulty with short term memory loss, motor skill deficiencies, back injuries and that a traumatic brain injury has caused depression.  [He] also reported that the claimant has "no problem" with activities of personal care, and that he has to take "frequent showers to get some relief from injuries and conditions."  He alleged that he must leave the claimant notes and

send him text messages to help reminding him to take medications.  He reported that the claimant spends his time watching television, news, and movies, spending time with his dogs and listening to music.  He reported that the claimant does not spend time with others.  He indicated that the claimant can only walk short distances, and cannot pay attention due to memory loss and concentration deficits.

(AR 30 (internal citations omitted).)

ALJ Reason found that Gary H.'s statements "not persuasive because they are simply inconsistent with the preponderance of the objective evidence in this case."  (AR 30.)  ALJ Reason further found that "the medical diagnoses and examination findings are more persuasive as they provide a more objective basis for the degree of mental and physical limitation assessed."  (AR 30.)

### C. Analysis

Plaintiff asserts that ALJ Reason erred in discounting Plaintiff's father's statements because ALJ Reason failed to articulate "germane reasons" for doing so.  (Dkt. No. 14 at 25.)  However, ALJ Reason made it clear on the record that she considered Gary H.'s statements, and despite not being required to do so, also articulated how she considered them.  (AR 30.)  Therefore, ALJ Reason did not err as she was under no obligation to expressly reject Plaintiff's father's statements or provide reasons for doing so.  20 C.F.R. § 404.1520c(d); *see Monroe v. Kijakazi*, No. 1:20-cv-01508-SKO, 2022 U.S. Dist. LEXIS 99617, at *31 (E.D. Cal. June 3, 2022) (citation omitted) ("Friends and family members in a position to observe symptoms and activities are competent to testify as to a claimant's condition.  Nevertheless, under the revised regulations, the ALJ is not required to articulate how he considered [such] testimony.").

1       Furthermore, even under the previous precedent requiring the ALJ to articulate
2   "germane reasons" for discounting lay witness testimony, ALJ Reason specified that she found
3   Plaintiff's father's statements were "not persuasive because they are simply inconsistent with
4   the preponderance of the objective evidence in this case." (AR 30.) The Ninth Circuit has
5   consistently found that "[o]ne reason for which an ALJ may discount lay testimony is that it
6   conflicts with medical evidence." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Bayliss v.*
7   *Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (finding that inconsistency with medical
8   evidence is a germane reason for discrediting the testimony of lay witnesses). Therefore, ALJ
9   Reason did not err in her consideration of Plaintiff's father's statements.
10
11  **III.   RFC Determination and Substantial Evidence**
12
13       **A.    Legal Standard**
14
15       An RFC is what a claimant is still capable of doing "despite . . . physical, mental,
16  nonexertional, and other limitations." *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir.
17  1989) (citing 20 C.F.R. § 404.1545). The ALJ, rather than the claimant's physician, "is
18  responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v.*
19  *Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Vertigan v. Halter*, 260
20  F.3d 1044, 1049 (9th Cir. 2001). In determining the RFC, "[a]n ALJ cannot properly rely on
21  the ALJ's own lay knowledge to make medical interpretations of examination results or to
22  determine the severity of medically determinable impairments." *Sophia G. v. Kijakazi*, No.
23  EDCV 20-2574-E, 2021 U.S. Dist. LEXIS 190190, at *5 (C.D. Cal. Oct. 1, 2021). Instead, an
24  ALJ should holistically determine a claimant's RFC "based on all of the relevant medical and
25  other evidence," 20 C.F.R. § 416.945(a)(3), including evidence that is both favorable and
26  unfavorable to the claimant, *Cox v. Colvin*, 639 F. App'x 476, 477 (9th Cir. 2016). An ALJ
27  can rely on the following categories of evidence: objective medical evidence ("medical signs,
28  laboratory findings, or both"); medical opinion(s) ("a statement from a medical source about

23

what you can still do despite your impairment(s)"); other medical evidence ("judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis"); evidence from nonmedical sources (including evidence from the claimant); and prior administrative medical findings ("finding[s] about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review").  20 C.F.R. § 416.913.

An  RFC is defective if it fails to take a claimant's limitations into account.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  However, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (noting that "components of an RFC assessment" need not necessarily "line up with an expert medical opinion"); *see also McIntosh v. Colvin*, No. CV 16-963-JAH (BGS), 2018 U.S. Dist. LEXIS 30778, at *5 (S.D. Cal. Feb. 26, 2018) ("There is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC."); *Lyons v. Colvin*, No. CV 14-605-DMG (KK), 2015 U.S. Dist. LEXIS 174532, at *24 (C.D. Cal. June 11, 2015) ("While an ALJ's RFC finding need not be identical to credible medical opinions, it does need to be consistent with them."), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 4402 (C.D. Cal. Jan. 11, 2016).  In fact, opinions of non-treating or non-examining physicians that are consistent with the evidence in the record "may also serve as substantial evidence."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### B.  The ALJ's Decision

ALJ Reason assessed the following RFC:

After careful consideration of the entire record, the undersigned finds that prior

24

to January 1, 2020, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: he can only sit for two hours at a time and up to 8 hours total in an 8-hour workday; he can stand 30 minutes at one time, and for up to 2 hours total in an 8-hour workday; he can walk for 30 minutes at one time, and for up to four hours total in an 8-hour workday; he can use his upper extremities for reaching frequently and has no limitations in handling, fingering and feeling; he can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; he must avoid heights and heavy machinery; he must avoid extremes of cold; and he would be limited to unskilled work performed at a routine pace as opposed to production paced work.

(AR 25-26.)

## C. Analysis

Plaintiff asserts that ALJ Reason "errs by failing to address the limitations imposed by Plaintiff's brain injury, including irritability and poor memory of the visual limitations including monocular vision and difficulty seeing in bright light." (Dkt. No. 14 at 27.) But beyond Dr. Sharokhi's opinion and the statements of Plaintiff's father, both of which the Court has already determined the ALJ appropriately considered, Plaintiff does not offer, nor does the record support, a finding that any limitations imposed by Plaintiff's injury for any period before January 1, 2020 were not already adequately accounted for in ALJ Reason's RFC assessment. *See McIntosh v. Colvin*, No. CV 16-963-JAH (BGS), 2018 U.S. Dist. LEXIS 30778, at *5 (S.D. Cal. Feb. 26, 2018) ("There is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC."); *Higgins v.* Kijakazi, No. 22-35966, 2023 U.S. App. LEXIS 29111, at *6 (9th Cir. Oct. 18, 2023); 20 C.F.R. § 404.1529(a) (stating that the ALJ need only consider symptoms to "the

extent to which [these] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence"). Accordingly, the Court finds that ALJ Reason did not err because her RFC assessment is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, the Court finds that neither reversal of the ALJ's decision nor remand is warranted because the Commissioner's decision is supported by substantial evidence and free from material legal error.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 27, 2025

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE